















```
RYC   2/10/03   15:41
3:03-CV-00270   BENTON V. ASHCROFT
*3*
*APPL.*
```

1 │ SHEREEN J. CHARLICK
    │ California Bar. No. 147533
2 │ FEDERAL DEFENDERS OF SAN DIEGO, INC.
    │ 225 Broadway, Suite 900
3 │ San Diego, California  92101-5008
    │ (619) 234-8467
4 │
5 │ Attorneys for Petitioner
6 │
7 │
8 │                    **UNITED STATES DISTRICT COURT**
9 │                   **SOUTHERN DISTRICT OF CALIFORNIA**
10 │
11 │ **DEBORAH E. BENTON**                    Civil Action No.
12 │                        **Petitioner,**        '03 CV 0270 L    POR
13 │        v.                                **APPLICATION**
14 │ **JOHN A. ASHCROFT, ATTORNEY**              **FOR**
    │ **GENERAL, UNITED STATES**          **PRELIMINARY INJUNCTION**
15 │ **DEPARTMENT OF JUSTICE and**
    │ **UNITED STATES DEPARTMENT OF**         [Fed. R. Civ. P. 65(a)]
16 │ **JUSTICE FEDERAL BUREAU OF**
    │ **PRISONS,**
17 │                      **Respondents.**
18 │
19 │                              **I.**
20 │                   **PRELIMINARY STATEMENT**
21 │         Petitioner respectfully requests that the Court issue a preliminary injunction order enjoining
22 │ Respondent Federal Bureau of Prisons ("BOP") from refusing, unlawfully to designate her to placement in
23 │ a Community Corrections Center ("CCC"), and, rather directly designating her to a penal institution, namely
24 │ FCI, Victorville, as such designation decision results from the application of a new "procedure change" which
25 │ is unlawful and unlawfully retroactively applied to Ms. Benton.  She is currently scheduled to self-surrender
26 │
27 │ on  February 21, 2003.
28 │



FILED

FEB - 7 2003

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    /DEPUTY

3

The basis for the injunction is as follows:

Petitioner Deborah E. Benton respectfully applies to the Court for a Writ of Habeas Corpus to remedy the unlawful retroactive application of a new rule changing Bureau of Prisons ("BOP") procedure eliminating her ability to serve her imposed sentence of five-months at a "correctional" as opposed to a "penal" facility. She is presently serving is her sentence at  the Pacific Furlough Facility, a community corrections  center ("CCC"), where she was previously designated pursuant to then-existing BOP rules and policies.

On January 23, 2003, the undersigned was informed that Ms. Benton was designated to FCI, Victorville, rather than to a CCC due to actions taken by Respondents.

Petitioner is within the custody of the United States Department of Justice Federal Bureau of Prisons ("BOP") as a result of a five-month sentence imposed on December 23, 2002.[1] She is awaiting self-surrender which is scheduled for February 21, 2003, thus, the need for immediate relief.

This action by the BOP would violate the federal laws and the Constitution of the United States.  In her Petition for Writ of Habeas Corpus, also filed with this Court, she argues first that the BOP's change in policy is contrary to the plain meaning of the statute governing how inmates may be housed, 18 U.S.C. § 3621(b).  Second, it is contrary to the statute's legislative history.  It also contravenes principles of agency interpretation and violates the Administrative Procedure Act ("APA").  As to Ms. Benton, who was sentenced and designated prior to the effective date of this "procedure change," it constitutes an impermissible retroactive application.  Because Ms. Benton will face irreparable harm if Respondent BOP transfers her to

---

[1] Ms. Benton was sentenced in Zone C of the Sentencing Guidelines to a 10-month split sentence with one-half to be served at the Urban Work Cadre as a judicial recommendation and one-half to be served in home confinement. *See* Exhibit A to habeas petition, Judgment & Commitment Order.

1   to a penal institution while her petition is pending as scheduled, she seeks a temporary restraining order to

2   prevent such injury.

3                                                    **II.**

4                                           **BACKGROUND**

5

6        The facts surrounding Petitioner's claims and the procedural history of this case are set forth in detail

7   in Petitioner's Petition for Writ of Habeas Corpus and memorandum of points and authorities in support

8   thereof, filed contemporaneously.

9                                                   **III.**

10

11                                      **LEGAL ARGUMENT**

12  A.    **This Court Should Grant a Preliminary Injunction Precluding Respondent from Requiring**
        **Petitioner to Serve her Sentence at a Penal Institution.**

13

14       To receive a preliminary injunction, plaintiffs were required to show "either a likelihood of success

15  on the merits and the possibility of irreparable injury, or that serious questions going to the merits were raised

16  and the balance of hardships tips sharply in its favor." *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d

17  1115, 1119 (9th Cir.1999) (quoting *Sega Enters. v. Accolade, Inc.*, 977 F.2d 1510, 1517 (9th Cir.1992)).

18
    This Court has explained that "[t]hese two alternatives represent 'extremes of a single continuum,' rather than
19

20  two separate tests." *Id.* (quoting *Benda v. Grand Lodge of Int'l Ass'n of Machinists & Aerospace Workers*,

21  584 F.2d 308, 315 (9th Cir.1978)).   Thus, "the greater the relative hardship to the moving party, the less

22  probability of success must be shown." *Id.* (quoting *National Ctr. for Immigrants Rights v. INS*, 743 F.2d

23
    1365, 1369 (9th Cir.1984)).   Conversely, "it has been held that a preliminary injunction may be granted even
24

25  though the harm factor favors defendant if plaintiff demonstrates a substantial likelihood that she ultimately

26  will prevail."   11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane,   Federal Practice and

27  Procedure § 2948.3 (2d ed.1995).   All of these factors weigh in favor of Petitioner and both tests militate in

28

                                                    3

favor of granting the temporary restraining order until such time that both parties have opportunity to fully brief and be heard with respect to Petitioner's application for a preliminary injunction.  The preliminary injunction would preserve the status quo and prevent the irreparable loss of rights.  *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

In addition, several other courts, including the Ninth Circuit, have either stayed the transfers of prisoners or extended self-surrender dates of other individuals pending determination of the legality of the BOP's actions. *See, e.g., Bugarin v. Weiss*, No. 03-55141 (9th Cir. January 24, 2003) (order enjoining BOP from transferring client from CCC and considering denial of TRO as denial of preliminary injunction and ordering briefing on the merits); *United States v. Iacaboni*, No. 01–30025-MAP, 02-20013-MAP (granting preliminary injunction);*Tipton v. BOP* No. CCB-03-153 (D. Md. 2003); *Canavan v. BOP*, No CCB-03-154) (D. Md. 2003); *Brinsfield v. BOP,* No. CCB-03-192 (D. Md. 2003); *United States v. Arthur*, No. 00-Cr-448 (W.D.N.C. 2003);*Ashkenazi v. Attorney General*, No. 1:03CV000062 (D.D.C. 2003); *United States v. Tuhy,* No. 01-122BLGRFC07 (D.Montana 2003) ; Exhibit G, *Bugarin* Order and Associated Press Article detailing several judges stay of prison transfers.

> 1.  **Petitioner Has a Strong Likelihood of Success on the Merits of her Petition or, at the Very Least, Raises a Serious Question as to Respondent's Power to Transfer Him to a Penal Institution.**

Petitioner is scheduled to self-surrender to FCI, Victorville on February 22, 2003. She contemporaneously has filed a Petition for Writ of Habeas Corpus with this Court outlining her arguments why the actions of Respondents, taken pursuant to a new "procedure change," designating her to a penal facility instead of a CCC are unlawful. Petitioner makes several arguments on both constitutional and statutory grounds as to why this Court should issue a Writ of Habeas Corpus in her matter.

Petitioner seeks relief in the nature of habeas corpus challenging the conditions of confinement imposed by a federal agency.  These are formally legal actions, which have traditionally been governed by

1  equitable principles. *See Fay v. Noia,* 372 U.S. 391, 438 (1963); *Pinkney v. Keane,* 920 F.2d 1090, 1093 (2d

2  Cir. 1990) (habeas corpus); *First National Bank v. Reed*, 306 F.2d 481, 483 (2d Cir. 1962) (mandamus).

3  Injunctive relief is available under Fed.R.Civ.P. 65. *See generally Browder v. Director, Illinois Dept. of*

4  *Corr.*, 434 U.S. 257, 269-71 (1978), and *Harris v. Nelson*, 394 U.S. 286 (1969), interpreting Fed.R.Civ.P.

5

6  81(a)(2); *cf.* Fed.R.Gov. § 2254 Proc. 1(b), 11 (habeas rules applicable in court's discretion to petitions not

7  filed under § 2254; civil rules applicable to extent "not inconsistent with" habeas rules).

8      Habeas corpus relief under 28 U.S.C. § 2241 is available to compel the Bureau of Prisons to exercise

9  its authority under 18 U.S.C. § 3621(b) in accordance with a correct interpretation of its statutory power.

10

11 *McCarthy v. Doe*, 146 F.3d 118 (2d Cir. 1998).  The respondent's proposed, challenged action is based on

12 an Opinion of the Department of Justice Office of Legal Counsel ("*Re: Bureau of Prisons practice of placing*

13 *in community confinement certain offenders who have received sentences of imprisonment*," December 13,

14 2002).[2]   Exhaustion of administrative remedies under the BOP's procedures takes a minimum of

15 approximately 90 days to appeal first to the Community Corrections Manager, then to the Regional Director,

16

17 and finally to the BOP General Counsel.  In any event, Ms. Benton attempted to exhaust and was informed

18 by BOP that she would indeed be transferred.  Accordingly, exhaustion of administrative remedies is deemed

19 satisfied, or would be futile or impossible to accomplish in time.  To the extent that it is even required under

20 section 2241, *see Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990) ("The requirement that federal prisoners

21

22 exhaust remedies before filing a habeas corpus petition was judicially created; it is not a statutory

23 requirement.").  Exhaustion therefore need not be attempted in this case. *See Howell v. INS*, 72 F.3d 288,

24 291 (2d Cir. 1995).

25

26

27

28  [2] Exhibits detailing the BOP's new policy are attached to the habeas corpus petition filed simultaneously with this application for a preliminary injunction.

5

1    Petitioner is very likely to prevail on the merits. At least one court has already ruled in her favor. *See*

2  *Culter v. United States*, __ F. Supp. 2d __ 2003 WL 184022 (D.D.C. 2003).   First, as provided above, the

3  BOP's actions are based upon an erroneous "new" interpretation of federal law. The Bureau of Prisons, prior

4  to December 2002, had long construed 18 U.S.C. § 3621(b), like its pre-Sentencing Reform Act predecessor,

5  former 18 U.S.C. §4082(b), to authorize the designation of a community corrections center (formerly known

6  as community treatment centers) as the "penal or correctional facility" for service of a federal sentence.  BOP

7  Program Statement. 7310.04 (12/16/1998) (current version); and prior versions, including P.S. 7310.01.  As

8  the Program Statement explains:

9
10     ·18 U.S.C. § 3621(b) provides:

11
12         "The Bureau of Prisons shall designate the place of the prisoner's imprisonment. The Bureau
           may designate any available penal or correctional facility . . . the Bureau determines to be
13         appropriate and suitable."

14  A CCC meets the definition of a "penal or correctional facility."

15
    "Therefore, the Bureau is not restricted by section 3624(c) in designating a CCC for an inmate . . . ".
16

17  BOP Program Statement. 7310.04 ("Community Corrections Center (CCC) Utilization") § 5, at 4.

18    At least two other publicly available BOP Program Statements reiterate this legal conclusion. *See*

19  Program Statement 5100.07 ("Security Designation and Custody Classification Manual"), ch.4, at 2

20  (9/3/1999, with 1/31/2002 changes) ("**Direct Commitments to CCCs**.  Direct commitment to CCCs may

21  be made on the court's recommendation.  If an offender appears to be a candidate for a CCC and it appears

22  that the court did not consider placement in a CCC, the CCM shall contact the court for concurrence of such

23  placement."); Program Statement. 7300.09 ("Community Corrections Manual") 6.1.1, at 1 (1/12/1998)

24  ("**Direct Court Commitments**.  Direct court commitments are cases where a U.S. District Court Judge or

25
26  Magistrate Judge has imposed a short sentence (one year or less, or longer with approval from the Regional

27  Designator) of confinement with the recommendation that it be served in a contract CCC . . . ").

28

6

The BOP has incorporated this legal position into its publications for the federal judiciary. *See* Bureau of Prisons, "Judicial Resource Guide to the Federal Bureau of Prisons," at 16 (2000) (describing "Direct Designation to a Community Corrections Center"); Bureau of Prisons, "A Judicial Guide to the Federal Bureau of Prisons," at 10-11 (1995) ("Title 18 U.S.C. §3621 provides that the Bureau of Prisons will designate where a prisoner will serve his or her sentence. . . . The CCM makes a determination. . . . with court concurrence, whether she or she might appropriately be placed in a contract community corrections facility").

This interpretation of section 3621(b) as allowing initial designations of and direct commitments to a CCC as a form of punitive confinement in satisfaction of a sentence of imprisonment, as stated in Program Statement 7310.02 (1993), was expressly noted and approved by the Supreme Court in *Reno v. Koray*, 515 U.S. 50, 62 (1995).

In 1992, the Office of Legal Counsel concluded that the former interpretation of section 3621(c) was correct:

> There is, moreover, no basis in section 3621(b) for distinguishing between residential community facilities and secure facilities. Because the plain language of section 3621(b) allows BOP to designate 'any available penal or correctional facility,' we are unwilling to find a limitation on that designation authority based on legislative history. Moreover, the subsequent deletion of the definition of 'facility' further undermines the argument that Congress intended to distinguish between residential community facilities and other kinds of facilities.

"Statutory Authority to Contract With the Private Sector for Secure Facilities," 16 Op.OLC 65 (1992) (available at www.usdoj.gov/olc/quinlan.15.htm), attached to habeas petition.

The BOP's new definition of what can be considered "imprisonment" is not as it contends, in violation of U.S.S.G. § 5C1.1, which would not govern in any event since BOP is charged with interpretation of the governing statute: 18 U.S.C. § 3621(b). By applying the Sentencing Commission's interpretation of section 3621(b) (to the extent that it was even considered by the Commission at all) is an abdication of the BOP's statutory responsibilities. In any event, the United States Sentencing Commission is aware of and has

1 approved the practice of direct CCC designation under section 3621(b). In a joint report to Congress pursuant

2 to 28 U.S.C. §994(q) entitled "Maximum Utilization of Prisons Resources" (June 30, 1994), the Commission

3 and the BOP noted:

> Community correction centers (CCC) provide two program components within their facilities: a pre-release component and a community corrections component . . . . The community corrections component is designed to be sufficiently punitive to be a legitimate sanction, meeting the needs of the court and society, yet allowing the offender to undertake other responsibilities, such as participation in work . . . . Except for employment and other required activities, offenders in the CCC component must remain in the facility at all times. Recreation, visitation, and other activities and programs are provided in-house.

Maximum Utilization Report, at 9-10.

Last, the BOP's application of its new policy regarding CCC placement retroactively violates the Ex Post Facto Clause of the U.S. Constitution and the presumption against retroactivity as well as the Due Process Clause of the Fifth Amendment. Ms. Benton had been sentenced by a judge, who recommended that she participate in the Urban Work Cadre program for the 5-month custodial portion of a 10-month split sentence – the Urban Work Cadre program requires that she be designated to a CCC, the participating CCC is Pacific Furlough here in San Diego. Had the sentencing court been aware that Ms. Benton would never receive such a designation because the BOP had suddenly reversed course and changed a 20-plus year policy of directly designating individuals in her precise situation to CCCs, the sentence may have been determined and fashioned differently. Her sentencing was based upon misinformation. The Due Process Clause precludes reliance upon inaccurate information at sentencing. *United States v. Inglesi*, 988 F.2d 500, 502 (4th Cir. 1993); *United States v. Lee*, 540 F.2d 1205, 1210-1211 (4th Cir. 1976); *United States v. Katzin*, 824 F.2d 234, 241 (3d Cir. 1987) (sentencing based upon mistaken factual assumptions violates due process); *see also United States v. Tucker*, 404 U.S. 443 (1972) (vacating sentence imposed not in the informed discretion of a trial judge, but . . . founded at least in part upon misinformation of a constitutional magnitude"). The fact that the court was not empowered to order that petitioner serve his sentence at a particular facility does not

8

defeat her claim. In *United States v. Hollenbeck*, 932 F. Supp. 53, 58 (N.D.N.Y. 1996), the BOP provided the court with misinformation about the individual's eligibility for the drug treatment program. The court held that due process was violated by sentencing the defendant based on such inaccurate information notwithstanding the BOP's discretion. *Id.* at 58-59.

The Supreme Court has also indicated in situations like that of Ms. Benton that a significant change in the nature of an inmate's sentence can violate the Ex Post Facto Clause. *See Lynce v. Mathis*, 519 U.S. 433 (1997); *Weaver v. Graham,* 450 U.S. 24 (1981). Furthermore, Ms. Benton and her sentencing judge had a settled expectation that she could be housed at a CCC and allowed to participate in the Urban Work Cadre program as a result of her sentence. Despite this expectation, which was in accord with what all believed was BOP policy, the BOP has applied retroactively the new procedure change to her. Case law makes clear that the BOP cannot take such retroactive measures. *See Cort v. Crabtree*, 113 F.3d 1081 (9th Cir. 1997), and *Bowen v. Hood,* 202 F.3d 1211 (9th Cir. 2000), and this new policy cannot be applied retroactively to Ms. Benton.

Accordingly, Petitioner Benton, at the very least, has raised a serious question as to whether Respondents have the authority to apply this new "procedure change" to her causing her to serve her custodial sentence at a penal facility rather than a CCC.

## 2.   Petitioner Faces Significant Irreparable Harm If Injunctive Relief Is Not Granted.

The fact that Respondent BOP has indicated to Petitioner that she must surrender to the penal facility instead of to the CCC, as the judicial recommendation noted, demonstrates that she will suffer actual injury in the absence of preliminary injunctive relief. *See Diamontiney v. Borg*, 918 F.2d 793, 795 (9th Cir. 1990) (concluding that "'a strong threat of irreparable injury before trial is an adequate basis'" for injunctive relief) (quoting 11 C. Wright & A. Miller, Federal Practice & Procedure (Civil 2d), § 2948 at 437-38 (1973)).

Furthermore, absent an order by this Court enjoining Respondents from requiring Ms. Benton to serve her sentence at FCI, Victorville, or at least extending her self-surrender date until the habeas petition is resolved, she will be forced to spend the duration of the pendency of her habeas case in the custody of a penal institution rather than a CCC where she loses the benefit of the programs, conditions of confinement, ability to be employed and other liberty interests which she can never regain. At present, it is unclear how much time might pass before this case is resolved. Should a preliminary injunction or an extension of her self-surrender date not issue, the nature of Petitioner's incarceration thus would change radically for some period of time.

**3.      The Balance of Hardships Favors Petitioner.**

Petitioner's potential incarceration at a penal institution far outweighs any hardships that injunctive relief would create for Respondents. Certainly allowing Petitioner to remain in the community or to go to a CCC at least until her habeas case is resolved would result in no apparent harm to Respondents

## IV.

## CONCLUSION

For the reasons set forth above and in the accompanying Petition for Writ of Habeas Corpus and memorandum of points and authorities in support thereof, Petitioner respectfully requests that the Court issue preliminary injunction enjoining Respondent from unlawfully altering its prior interpretation of 18 U.S.C. § 3621(b) and designating Ms. Benton to the FCI, Victorville, rather than to a CCC.

Respectfully submitted,

Dated:  February 7, 2003

SHEREEN J. CHARLICK
Supervisory Attorney
FEDERAL DEFENDERS OF SAN DIEGO, INC.
225 Broadway, Suite 900
San Diego, CA 92101
Telephone: (619) 234-8467
Attorneys for Petitioner Benton

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| **DEBORAH E. BENTON,** | ) | **Civil Action No.** |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **PROOF OF SERVICE** |
| | ) | |
| **JOHN A. ASHCROFT, ATTORNEY** | ) | |
| **GENERAL, UNITED STATES** | ) | |
| **DEPARTMENT OF JUSTICE and UNITED** | ) | |
| **STATES DEPARTMENT OF JUSTICE** | ) | |
| **FEDERAL BUREAU OF PRISONS,** | ) | |
| | ) | |
| **Respondents.** | ) | |
| | ) | |

I, the undersigned, say:

1.      That I am over eighteen (18) years of age, a resident of the County of San Diego, State of California, not a party in the within action, and that my business address is 225 Broadway, Suite 900, San Diego, California, 92101-5008; and

2.      That I served delivered and original and four copies of the PETITION FOR WRIT OF HABEAS CORPUS AND MEMORANDUM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT FOR WRIT OF HABEAS CORPUS and APPLICATION FOR PRELIMINARY INJUNCTION and to the United States District Court, Southern District of California, and

3.      That I served the a copy of the within PETITION FOR WRIT OF HABEAS CORPUS AND MEMORANDUM AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT FOR WRIT OF HABEAS CORPUS and APPLICATION FOR PRELIMINARY INJUNCTION to all parties via certified mail:

> **JOHN D. ASHCROFT, Attorney General**
>  **of the United States**
> **U.S. Department of Justice**
> **950 Pennsylvania Avenue  NW**
> **Washington, D.C.  20530-0001**
>
> **FEDERAL BUREAU OF PRISONS**
> **Department of Justice**
> **320 First Street  NW**
> **Washington, D.C.  20534**

4.      That the same were delivered and deposited in the U.S. mails, first class postage prepaid, at San Diego, California, on February 7, 2003.

I certify that the foregoing is true and correct. Executed on February 7, 2003, at San Diego, California.

MARGARITA GONZALES